CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 28 2010

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:10CV00075 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| ) | |
| B. CALTON, ET AL., ) | By: Glen E. Conrad |
| ) | Chief United States District Judge |
| Defendants. ) | |

Plaintiff James Williams, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In his complaint, Williams alleges that officials at the United States Penitentiary in Jonesville, Virginia (USP Lee) violated his constitutional rights by housing him under harsh conditions in the segregation unit for no reason, by interfering with his ability to access the courts, and by failing to provide adequate dental care. Upon review of the record, the court finds that some of plaintiff's claims must be summarily dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), as legally frivolous.

## I. Background

Williams' submissions offer the following factual background. In October 1999, while he was incarcerated at the federal penitentiary in Florence, Colorado, authorities abruptly transferred him to state custody to stand trial on a capital murder charge in Lehigh County, Pennsylvania. In 2001, Williams was convicted of capital murder and sentenced to death. Thereafter, he was returned to federal custody and was incarcerated for a time at USP Lee.

Williams filed this complaint in February 2010, naming several USP Lee officers as defendants and alleging several vague claims of constitutional violations. The court filed the complaint conditionally and advised Williams that his complaint failed to identify which defendant was being sued in each claim and to particularize the facts in support of each claim. Because Williams is pro se, the court granted him time to amend to correct these deficiencies. Williams responded with a lengthy amendment, which the court will grant. Upon review of the complaint as amended, the court construes Williams' submissions as raising the following grounds for relief under Bivens:

1. USP Lee officials abruptly removed Williams from the general population and housed him in the segregation unit from May 2007 through August 2008 without due process, in retaliation based on habeas corpus claims he was pursuing,[1] and in violation of equal protection principles.

2. In the segregation unit, Williams was subjected to the following living conditions, which he challenges as unconstitutional:

    a. he was under observation by surveillance cameras at all times;

    b. he had no contact with other prisoners;

    c. Officers Calton, Laloude, and Campbell repeatedly refused to honor Williams' requests that they flush the toilet in his dry cell, causing unsanitary conditions from which Williams contracted repeated staph infections and rashes;

    d. he was exposed to bright lights or complete darkness for hours or days at a time;

---

[1] Williams states that during his incarceration at USP Lee, he was pursuing a pro se petition for a writ of habeas corpus, related to his state court capital murder conviction and death sentence.

e. he was forced to sleep on hard bunk, causing back pain;

f. he received out of cell recreation only five times in over a year;

g. he was denied access to nonlegal books, magazines, and newspapers for four months;

3. While in segregation, Williams was denied follow-up dental treatment related to fillings, a root canal, and a crown, resulting in loss of a tooth that causes a gap in his smile;

4. USP Lee officials hampered Williams' access to the courts in the following respects:

   a. Defendants Laloude, Delores Willis, and Mr. Chambers repeatedly intercepted outgoing legal mail to his attorney and the courts;

   b. Defendant Laloude repeatedly denied him access to administrative remedy forms;

   c. Defendant Laloude stole legal documents and exhibits related to Williams' state <u>habeas</u> proceedings;

   d. officials limited his law library privileges to one hour per week;

   e. officials restricted his telephone privileges to 15 minutes per month;

   f. officials restricted him to non-contact visits with attorney, while hampered by full restraints and shock belt;

5. On September 27, 2007, USP Lee Officer John Doe used excessive force against Williams when he asked to be allowed to make a confidential telephone call to his attorney; other USP Lee officers observed this incident through a window and did not intervene; and after the incident, Williams was denied his legal call and access to medical treatment;

6. On February 12, 2008, Officers B. Calton and Webb escorted Williams to a dirty cell, and when he refused to enter it, Calton slammed Williams into the cell door and then to the floor, causing a gash to Williams' head, a broken bone in his right hand, and other injuries; Williams was returned to the dirty cell and received inadequate medical treatment;

7. Williams' attempts to utilize the administrative remedies procedures regarding the February 12, 2008 assault by B. Calton were frustrated because officers refused to give him appropriate forms when requested and in response to grievances filed, officers merely informed Williams that the incident was under investigation.

8. Officers B. Calton, his brother (also named Calton), Crum, Shoemaker, and Laloude verbally threatened Williams about his pending habeas claims, constituting psychological abuse.

## II. Discussion

To state a cause of action under Bivens, an individual must prove that he suffered harm as a result of constitutional violations committed against him by federal officials. 403 U.S. at 397. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S.__, 129 S. Ct. 1937, 1948 (2009). A Bivens claim is analogous to a claim under 42 U.S.C. § 1983, which authorizes civil actions against state officials in their personal capacities for violations of constitutional rights. Case law involving § 1983 claims is applicable in Bivens actions and vice versa. See Farmer v. Brennan, 511 U.S. 825, 839 (1994); Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-44 (4th Cir. 1988).

A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." The factual allegations in the complaint must contain "more than labels and conclusions" and "must be enough to raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1940 (2009). After review of Williams' allegations as amended, the court concludes that as to many of his claims, he fails to allege facts stating any plausible claim actionable under Bivens.

### A. Segregated Confinement

In Claim 1, Williams alleges that his confinement in isolation violated his constitutional rights in several respects. Upon review of the complaint, the court concludes that this claim must be dismissed, pursuant to § 1915A(b)(1).

First, Williams claims that this housing change violated his due process rights. While convicted prisoners relinquish many rights upon being incarcerated, the due process clause of the Fourteenth Amendment mandates procedural safeguards before an inmate may suffer a change in status that "imposes atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." See Sandin v. Conner, 515 U.S. 472, 484 (1995). On the other hand, where an inmate receives a change in housing assignment or a loss of privilege that is simply an expected part of prison confinement, no protected liberty interest arises, and that inmate has no claim for relief under the Due Process Clause, even if the change occurred without all the state-

created procedural protections during a disciplinary hearing. Id. The Court in Sandin specifically found that because the disciplinary penalty of segregated confinement imposed in that case did not exceed similar, but totally discretionary confinement in either duration or degree of restriction, this penalty did not implicate any federally protected liberty interest. Id. at 486-87.

Williams alleges that conditions and privileges in segregation were quite different from those he enjoyed in the general population. However, the United States Court of Appeals for the Fourth Circuit has held that confining segregation inmates for more than six months in conditions much worse than those plaintiff alleges was insufficient to trigger any federal due process right. Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997). The Beverati segregation inmates complained of no outside recreation, no clean clothes, less food, and cells infested with vermin and smeared with urine and feces. Id. The court cannot find that the segregation conditions of which plaintiff complains, as listed in Claim 2, were a dramatic departure from the expected restrictions of a prison sentence or that the conditions or changes in privileges were atypical enough to impose "a significant hardship in relation to the ordinary incidents of prison life." Id. Thus, the court will summarily dismiss the due process aspect of Claim 1.

Second, the court must also summarily dismiss the equal protection facet of this claim. As an inmate under a state court sentence of death, Williams must expect that he will be placed under more restrictive conditions than inmates serving a term of years. As he thus cannot claim that he is similarly situated to other inmates who remain in the general population at USP Lee, his equal protection claim fails. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (finding that to prove equal protection claim, litigant must demonstrate that he has been treated differently

from others similarly situated and that "unequal treatment was the result of intentional or purposeful discrimination").

Finally, the court also finds that Williams fails to allege facts stating a claim that his assignment to segregation at USP Lee constituted retaliation for his pursuit of habeas proceedings. Retaliation against an inmate for the exercise of his right to access the courts states a constitutional claim. Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). An inmate must allege facts showing that he "suffered some adversity in response to [his] exercise of [constitutionally] protected rights." American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). More specifically, he must show that his exercise of a constitutional right was a substantial factor motivating a retaliatory action and that the retaliatory action caused him more than de minimis inconvenience in exercising his constitutional rights. Id. at 785; see, e.g., id. at 786 (withdrawal of accommodation for ACLU paralegals visiting inmates, in response to a lawsuit, was not sufficient adverse impact on ACLU to state retaliation claim, since warden always had ability to restrict such access); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (finding that in order to state claim for retaliation, inmate must show that the alleged retaliation had an adverse impact on exercise of his constitutional rights); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996) (finding that inmate must "identify an actual injury resulting from official conduct," and "trivial claims of deprivation" are not actionable).

Although the court specifically advised Williams of the need to identify the defendant(s) whom he was suing in each claim, he fails to name any particular officer as responsible for transferring him to the segregation unit. Although he alleges that his counselor, Defendant Laloude, threatened that he would not get the new trial he was seeking and that he would "fry,"

he does not allege facts indicating that Laloude had any personal involvement in the decision to place Williams in the segregation unit. Moreover, even if Williams could present evidence demonstrating that his assignment to segregation had some relationship to his pending <u>habeas</u> proceedings, he fails to demonstrate that the conditions and restrictions in segregation caused any significant, adverse effect on his <u>habeas</u> efforts. Without specific information about the detrimental effects that segregated confinement itself caused to his litigation efforts, the problems he alleges (limited law library time, limited telephone privileges, etc.) do not rise above the level of <u>de minimis</u> inconvenience. Therefore, the court cannot find that he has alleged facts sufficient to state a prima facie retaliation claim and will dismiss Claim 1 in its entirety, pursuant to § 1915A(b)(1).

### B. Unconstitutional Living Conditions

The Eighth Amendment protects prisoners from cruel and unusual living conditions. <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981). In order to state a claim of constitutional significance regarding prison conditions, plaintiff must allege facts demonstrating that the defendant officials acted with deliberate indifference toward a condition that posed a significant risk of serious harm. <u>Farmer</u>, 511 U.S. at 835-37. Proof of deliberate indifference requires a showing that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he actually drew that inference, and that he disregarded the risk by failing to take "reasonable measures" to alleviate it. <u>Id.</u> Plaintiff must also show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. <u>Strickler v. Waters</u>, 989 F.2d 1375, 1380-1381 (4th Cir. 1993).

As to some of the living conditions about which Williams complains, such as lack of contact with other inmates and exposure to surveillance cameras, he alleges no resulting injury whatsoever. Strickler, 989 F.2d at 1380-1381. Therefore, these claims will be dismissed.

Williams does allege suffering some adverse effects in relation to other challenged living conditions, such as the non-flushing toilet and the bright lights (staph infections and sleep deprivation), the hard bunk (back pain), and lack of recreation (psychological abuse). He does not, however, allege any facts on which he could prove that any of these effects rose to the level of a significant mental or physical injury caused by the challenged conditions. Id. Indeed, he does not even allege that he sought, or required, medical or mental health treatment related to any of these claimed deprivations. Moreover, he does not allege any facts indicating that prison officials knew these conditions presented a significant risk of serious harm to Williams, as required for a showing of deliberate indifference. Farmer, 511 U.S. at 835-37.

Finally, Williams' claim concerning his alleged inability to possess books and magazines for four months in segregation must be dismissed for lack of a viable defendant associated with this claim. Although granted opportunity to amend, Williams does not identify any defendant whose personal actions or policies resulted in this alleged deprivation. See Iqbal, 129 S. Ct. at 1940 (requiring plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). For the stated reasons, the court will summarily dismiss Claim 2 in its entirety, pursuant to § 1915A(b)(1).

### C. Dental Care

Williams' claims concerning dental care must be dismissed for lack of a defendant. Although advised of the need to amend his claims in this respect, he fails to allege facts

indicating that any of the named defendants knew Williams had a serious medical need for treatment of the dental condition about which he now complains. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (finding that deliberate indifference to serious medical needs of prisoner states Eighth Amendment violation). The court will summarily dismiss Claim 3, pursuant to § 1915A(b)(1).

### D. Access to Courts

Where an inmate has had access to courts and to his attorney, but alleges denial of some item that he believed necessary for meaningful pursuit of his litigation, the inmate must allege facts showing actual injury or specific harm to his litigation efforts resulting from denial of the item. Lewis v. Casey, 518 U.S. 343 (1996). Stated differently, an inmate must come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions; instead, he must show that he was unable to file the initial complaint or that a complaint he filed was so technically deficient that it was dismissed without consideration of the merits. Id. at 351. The fact that an inmate may not be able to litigate in exactly the manner he wishes once a known claim has been brought before the court is not sufficient to demonstrate the actual injury element of an access to courts claim. Id. at 354.

The majority of Williams' claims that USP Lee officials interfered with his ability to pursue his habeas action must be dismissed because he fails to demonstrate any injury. Specifically, he fails to allege facts indicating that he was unable to proceed with any particular habeas claim or appeal because he was limited to 15 minutes of telephone time per month, because of the limitation on his law library access, because of the restrictive conditions under which he could visit with his attorney, or because of occasional problems with outgoing legal

mail. At the most, he alleges that these problems caused inconvenience, frustration, and even anxiety in his pursuit of his habeas action. He does not specify how his habeas action itself was adversely affected by the challenged conditions. Accordingly, he fails to allege a constitutional injury under Casey. 518 U.S. at 354. Therefore, these portions of Williams' access to courts complaint must be dismissed, pursuant to § 1915A(b)(1).

Similarly, Williams' allegations that USP Lee officials interfered with his ability to pursue administrative remedies within the prison system fail to state any actionable claim under Bivens. Because inmates have no constitutional right to a grievance procedure, officials' actions that interfere with an inmate's ability to utilize such a procedure do not state any denial of constitutional rights. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). All of Williams' claims related to the prison administrative remedies procedures will be dismissed, pursuant to § 1915A(b)(1).[2]

In Claim 4(c), however, Williams alleges that Defendant Laloude admitted to removing documents from Williams' legal materials, including original documents, photographs, confidential notes from counsel, and other materials, which required Williams to change the issues he could raise in the habeas proceedings. In an abundance of caution, the court will allow this portion of Claim 4 to go forward at this time.

---

[2] See Claims 4(b) and 7.

## E. Excessive Force

Williams alleges that officers used excessive force against him on two occasions during his incarceration at USP Lee. The first of those claims must be dismissed as time barred, but the remaining claim will be served.

### A. Alleged Excessive Force on September 27, 2007

Bivens actions, like actions under § 1983, are considered as personal injury claims and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred. Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999); Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir. 1983). Virginia has a two-year statute of limitations for general personal injury claims. Va. Code Ann. § 8.01-243(a). A Bivens claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Reinbold, 187 F.3d at 359 n.10 (quoting Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc)). An inmate's civil action is commenced for purposes of the statute of limitations as soon as he delivers his complaint to prison authorities for mailing. See, generally, Lewis v. Richmond City Police Depot, 947 F.2d 733 (4th Cir. 1991). In Virginia cases under Bivens, then, if an inmate has not delivered his complaint to prison officials for mailing within the two-year period following the time when he knew or had reason to know of his alleged injury, that inmate is barred by the Virginia statute of limitations from bringing suit. When the court determines, sua sponte, that the statute of limitations unquestionably provides an affirmative defense to this action, the court may summarily dismiss the complaint as frivolous, pursuant to §1915A(b)(1). See Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983) (applying former version of § 1915).

Williams failed to bring his claims concerning the September 2007 assault within two years from the date on which the claims accrued. Clearly, he knew in September 2007 of whatever harm he suffered during the alleged assault. Yet, he did not sign and date his complaint so as to file this action under <u>Bivens</u> until February 9, 2010, nearly two and a half years after the injury occurred. As Williams fails to demonstrate any impediment which prevented him from presenting his claims concerning the alleged assault on September 27, 2007 within two years,[3] the court concludes that these claims are time-barred under Va. Code § 8.01-243(a). Accordingly, the court will summarily dismiss Claim 5 in its entirety, pursuant to § 1915A(b)(1), as legally frivolous.

**2. Alleged Excessive Force on February 12, 2008**

Taking Williams' allegations concerning this alleged incident in the light most favorable to him, the court concludes that he has stated a possible claim that Officer B. Calton used excessive force against him. <u>Wilkins v. Gaddy</u>, ___U.S.___, 130 S. Ct. 1175, 1179 (2010) (finding that for Eighth Amendment excessive force claim, the "core judicial inquiry [is] . . . the nature of the force—specifically, whether it was nontrivial and was applied . . . maliciously and sadistically to cause harm"). Accordingly, the court will not dismiss this excessive force claim under § 1915A(b)(1).

To the extent that Williams is also attempting to bring a claim against Defendant Webb or to bring claims of unsanitary cell conditions or denial of medical treatment related to the

---

[3] While Williams complains that he had some limitations on his access to the law library, his legal mail, and his living conditions while he was incarcerated at USP Lee, he was transferred from there to another penal institution in August 2008. Moreover, during this same time period, he was able to pursue separate <u>habeas</u> proceedings.

- 13 -

February 12, 2008 incident, such claims must be dismissed for lack of specificity. Although directed to amend to particularize his claims concerning defendants' alleged constitutional violations, Williams fails to state any specific action that Webb took, or did not take, in violation of his rights.[4] Accordingly, Williams fails to state a claim against this defendant. Iqbal, 129 S. Ct. at 1948.

Williams also fails to allege specific facts indicating that any of the named defendants interfered with his ability to obtain medical treatment after the February 12, 2008 incident. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain) (internal quotations and citations omitted). He admits that he received medical treatment for a gash in his chin, but fails to allege facts indicating that any named defendant knew that this injury or the other medical conditions of which he now complains[5] presented serious need for additional or different medical treatment. See Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990) (finding that prison personnel may rely on the opinion of medical staff as to proper course of treatment for inmate's medical conditions). Moreover, although granted an opportunity to amend, he fails to specify any defendant who was responsible for his medical care after the February 12, 2008 incident.

---

[4] To the extent that Williams is attempting to hold Webb liable for failing to intervene to prevent the force used against him by Calton, his claim fails. His allegations do not suggest that Calton's use of force occurred in such a manner as to give Webb or any other bystander a reasonable opportunity to intervene or prevent the harm before Calton inflicted it. See Farmer, 511 U.S. at 844-45 (finding that officials who are unaware of risk or who act reasonably in response to risk cannot be found liable of Eighth Amendment violation).

[5] Williams alleges that after being slammed into the cell door and the floor, he suffered a broken bone in his right hand, severe shoulder pain, and continued bleeding from the gash, even after the staples had been applied.

Accordingly, the court will dismiss his medical claims related to that incident, pursuant to § 1915A(b)(1).

Williams also fails to allege any serious or significant injury he suffered as a result of the unsanitary cell conditions to which he was subjected on February 12, 2008. Strickler, 989 F.2d at 1380-1381. Accordingly, the portion of Claim 6 alleging unconstitutional cell conditions will be summarily dismissed, pursuant to § 1915A(b)(1), for failure to state a claim.

### F. Psychological Abuse

In his last claim, and indeed throughout his complaint, Williams alleges that officials routinely "intimidated" him by making comments like the following: "You keep complaining, [but] you should be lucky and thanking God that we're not in there beating the sh– out of you"; "If you do what the officer tells you– you might survive and make it out of here with all of your teeth"; and "Go ahead [and] kill yourself. [S]ave us the trouble and electric bill."

Verbal abuse and harassment by guards, without more, does not state any constitutional claim. Henslee v. Lewis, 153 Fed. App'x 179, 179 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979); Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991).

Certainly, if proven, the officers' alleged comments are reprehensible and highly unprofessional. They are not, however, basis for any independent constitutional claim under Bivens, and must, accordingly, be dismissed pursuant to § 1915A(b)(1).

### III. Conclusion

For the stated reasons, the court concludes that the majority of Williams' claims must be dismissed without prejudice, pursuant to § 1915A(b)(1). As to his claim that Defendant B. Calton used excessive force against him on February 27, 2008, and his claim that Defendant Lalaude removed legal documents from his outgoing mail, related to his pending state <u>habeas</u> proceedings, the court will allow the complaint to go forward. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 28th day of September, 2010.

_____
Chief United States District Judge