CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 27 2011

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES WILLIAMS, | ) |
| Plaintiff, | ) Case No. 7:10-cv-75 |
| v. | ) **MEMORANDUM OPINION** |
| L. CALTON, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

After the plaintiff, a federal inmate proceeding pro se, filed this action asserting several claims against various employees of the United States Penitentiary in Lee County, Virginia ("USP Lee"), the court dismissed each of his claims except for one: a claim alleging that Correctional Officer L. Calton subjected the plaintiff to excessive force on February 12, 2008. Calton has now filed a motion for summary judgment. For the reasons that follow, this motion will be denied.

## Background

The following facts are stated in the light most favorable to the plaintiff, the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

At the time relevant to his complaint, the plaintiff, James Williams, was an inmate at USP Lee, having previously been convicted of a variety of state and federal crimes, including first degree murder in the State of Pennsylvania. On February 12, 2008, correctional officers at USP Lee assigned Williams to a different cell in the Special Housing Unit (SHU), where he was incarcerated. Williams was restrained in handcuffs as the officers, one of whom was Officer Calton, transported him to the new cell.

As Williams concedes, when they arrived at the new cell, he "hesitated and verbally

refused" to go in the cell—apparently due to its unsanitary conditions. (Pl. Reply Br. at 7.) Williams denies that he threatened the officers in any way. Nevertheless, Calton allegedly smashed Williams against the wall of the cell and then slammed him face-first onto the ground. According to Williams, the takedown to the floor rendered him momentarily unconscious, and when he awoke, he was lying on the floor in a pool of his own blood. Williams claims that his head was gashed during the incident, that he experienced significant pain in his shoulder, that his right hand still bears "an unexplained lump" as a result of the incident, and that he suffered impairments to his vision and lower back that still linger to this day. (Docket No. 48 at 8.)

Soon after the incident, Williams was escorted to medical personnel, who determined that he had suffered a one-and-a-half inch laceration to his head, bleeding, and an abrasion on his lower back. (Docket No. 46-1 at 4.) The laceration was closed with six surgical staples. Williams' right hand and left shoulder were also x-rayed with no finding of injury except for traces of mild degenerative joint disease. (Docket No. 46-1 at 6.)

Several of the officers involved in the incident submitted incident reports in which they stated that Williams had refused to enter his assigned cell and had attempted to pull away from officers twice despite being explicitly warned not to do so. The officers explained that they had taken Williams to the ground after his second attempt to pull away from them. (Docket No. 46-1 at 7.) Williams was subsequently charged with refusing an order and received a fifteen-day loss of commissary privileges as a result. Id.

After Williams complained about the matter to prison officials, Special Investigative Agent Friss investigated the allegation and reviewed the relevant video footage. In Agent Friss' opinion, the video revealed that Williams had attempted to pull away from the officers and that

there was no evidence of any misconduct on the part of the correctional officers involved. (Docket No. 38-2 at 2.) Despite the fact that the video footage apparently exonerated the officers, Friss did not preserve it—pursuant, the defendant claims, to a policy that no video footage was preserved unless the inmate was going to be prosecuted or there was evidence of staff misconduct. Id.

Williams timely filed this suit, alleging, among other things, a claim of excessive force against Calton under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[1] Each of the other claims asserted by Williams have been dismissed at earlier stages in this suit, and Calton has now filed a motion for summary judgment on Williams' remaining claim, attaching several pertinent medical and prison records and affidavits.

## Discussion

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A party seeking summary judgment bears the initial burden of showing the absence of a

---

[1] Technically, Williams' claim arises under Carlson v. Green, 446 U.S. 14 (1980), which extended Bivens to recognize an implied damages action against federal prison officials for violation of the Eighth Amendment. See Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006).

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, however, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To forestall summary judgment, the nonmoving party must set forth more than a "mere . . . scintilla of evidence." Anderson, 477 U.S. at 252. At the very least, the nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)).

A. **Exhaustion of Administrative Remedies**

The first hurdle to Williams' Bivens claim is the requirement that, before bringing such actions, an inmate must exhaust "such administrative remedies as are available" to him with respect to the conditions of which he complains. 42 U.S.C. § 1997e(a). "[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Moreover, this exhaustion requirement requires "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 94 (2006). That is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 88.

For a federal inmate to properly exhaust his claims, he must typically first pursue an informal grievance procedure, after which he must file a written formal complaint on the proper form at the institutional level. See 28 C.F.R. §§ 542.10, 542.14. He must then appeal any adverse decision first at the regional level and then to the Bureau of Prisons' Office of General Counsel. See 28 C.F.R. § 542.15. In this case, Calton observes that, according to the Bureau of Prison's

("BOP") records, Williams did not file the appropriate forms at the appropriate institutional levels. Calton therefore argues that Williams' claim must be dismissed as inexhausted.

Calton agrees, however, that Williams "alleges he was denied administrative remedy forms" by certain USP officers. (Def. Br. at 4.) The gist of Williams' assertions is that one or more officers refused to give him the forms that were required for submission of complaints to the BOP. Because exhaustion is an affirmative defense, the defendant bears the burden of proving that Williams failed to administratively exhaust his claims. Jones v. Bock, 549 U.S. 199, 212 (2007). For purposes of the present motion, the court must side with Williams on any genuinely-disputed material fact. Anderson, 477 U.S. at 248. As a consequence, Calton is entitled to summary judgment on the basis of inexhaustion only if he can "show that the evidence is so one-sided that no reasonable factfinder could find that [the prisoner] was prevented from exhausting his administrative remedies." Hill v. O'Brien, 387 F. App'x 396, 399 (4th Cir. July 12, 2010) (unpublished) (reversing an award of summary judgment against a prisoner who claimed that prison officials had hindered his ability to file administrative grievances).

Of course, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As a consequence, because Calton cannot support the affirmative defense of inexhaustion by relying on a BOP procedure which Williams has asserted was unavailable to him, the court cannot dismiss Williams' claim on this ground at this time. See Hill, 387 F. App'x at 400.

### B. Qualified Immunity

Calton also urges that the claim against him be dismissed because he is entitled to the

5

defense of qualified immunity. This defense shields government officials from liability for civil damages unless (1) the evidence establishes the violation of a constitutional right, and (2) the right at issue was clearly established at the time of the alleged misconduct. Doe v. South Carolina Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). See also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Although the court's analysis of these two prongs need not be sequenced in this order, it is useful to do so here. Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

### 1. Williams Has Sufficiently Demonstrated an Eighth Amendment Violation

In the prison context, the Eighth Amendment's prohibition of cruel and unusual punishments both "outlaws excessive sentences" and also "protects inmates from inhumane treatment." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Although "[a]n express intent to inflict unnecessary pain is not required" to make out a claim under the Eighth Amendment, an inmate must show that the defendant inflicted unnecessary and wanton pain and suffering upon him. Whitley v. Albers, 475 U.S. 312, 319 (1986). Both objective and subjective considerations factor into such a showing. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether a prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

Where, as here, an inmate claims that a prison official used excessive force against him, the subjective component demands that the inmate demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm rather than as part of a good-

faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors relevant to this determination include the need for application of force, the relationship between the need and the amount of force that was used, the extent of the injury, the threat reasonably perceived by the responsible official, and any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 320-21.

Satisfying the objective component in the context of an excessive force claim, on the other hand, demands only that the force used be "nontrivial," Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1779 (2010), given that "contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9. Nevertheless, a plaintiff's failure to demonstrate a serious injury is not irrelevant to the Eighth Amendment inquiry. Wilkins, 130 S. Ct. at 1778. Indeed, the extent of the injury may suggest that "'the use of force could plausibly have been thought necessary' in a particular situation" or "provide some indication of the amount of force applied." Id. (quoting Hudson, 503 U.S. at 7). As a result, "[a]n inmate who complains of a [mere] 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9).

In this case, Williams has asserted that, upon seeing the conditions of the cell into which he was about to be ushered, he balked at entering it and verbally requested that he be transferred to a different cell. He also alleges that, in response to his hesitation, Calton slammed Williams against the wall of the cell and then head-first onto the cell's floor, where Williams sustained several injuries and regained consciousness in a pool of his own blood. There is no dispute that Williams was handcuffed during all of these events. For the purposes of this motion, where the

court must view all the facts and inferences in the light most favorable to Williams, the court must conclude that he has alleged sufficient, specific facts from which a reasonable jury could infer that Calton acted "maliciously and sadistically for the very purpose of causing harm." Williams, 77 F.3d at 761. Although the court acknowledges that "due deference" must be given to prison officials' efforts to restrain resisting inmates, Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999), Williams has alleged facts which suggest that the amount of force used against him was significant, that there was little need for this high degree of force to be used against him, and that he incurred substantial injuries as a result of Calton's untempered, forceful response to his limited resistance. Cf. Whitley, 475 U.S. at 320-21.[2] Accordingly, Williams has produced sufficient evidence from which, if believed, a jury could reasonably infer that he suffered a constitutional deprivation at the hands of Calton.

## 2. The Constitutional Violation was Clearly Established

Even where a plaintiff has elicited sufficient evidence to support an inference that he suffered a constitutional deprivation at the hands of government officials, the doctrine of qualified immunity shields government officials from civil damages unless the right that they violated was clearly established at the time of the incident. Cloaninger v. McDevitt, 555 F.3d 324, 330-31 (4th Cir. 2009). For the plaintiff to defeat a defense of qualified immunity, the right that the officer is alleged to have violated must have been clearly established in a

> particularized . . . sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This

---

[2] To the extent that the deleted video footage was favorable to Calton, of course, Agent Friss' decision not to preserve it harmed only the defendant. Cf. Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here . . . the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.").

8

> is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987). The law does not expect an officer "to sort out conflicting decisions or to resolve subtle or open issues." Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007). Accordingly, officers are liable only for "transgressing bright lines" rather than for "bad guesses in gray areas." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). See also Henderson v. Simms, 223 F.3d 267, 271 (4th Cir. 2000). "In the end, the lodestar for whether a right was clearly established is whether the law gave the officials fair warning that their conduct was unconstitutional." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quotation marks omitted).

In this case, the court cannot agree with Calton that he did not have "fair warning" that slamming a balking but otherwise unresisting and handcuffed inmate against the wall and then head-first into the floor constituted excessive force. Id.; Rainey v. Conerly, 973 F.2d 321, 324 (4th Cir. 1992); Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). Indeed, given the court's finding that the evidence adduced by Williams could support a reasonable inference that Calton acted maliciously and sadistically for the very purpose of causing him harm, the court would be hard-pressed to hold that Calton was not on notice that applying the alleged force with the alleged malice was unconstitutional. See Hudson, 503 U.S. at 7.

Nonetheless, Calton argues that he is entitled to qualified immunity because his conduct occurred before the Supreme Court's decision in Wilkins. Prior to Wilkins, the reigning authority in the Fourth Circuit on Eighth Amendment excessive force claims had held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive

9

force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc). Because Wilkins had not yet been decided at the time of Williams' injuries, claims Calton, he was not on notice that his conduct was unconstitutional.

The court is not convinced. Calton's claim boils down to an assertion that, prior to Wilkins, he could escape liability even where he acted maliciously and sadistically for the purpose of causing Williams harm, so long as Williams fortuitously avoided non-de minimis injury. This is a dubious conjecture, even at the time that the incidents in this case occurred, given that the Supreme Court had established prior to Norman that the "core judicial inquiry" with respect to Eighth Amendment excessive force claims centers upon the officers' subjective intent. Hudson, 503 U.S. at 7; Jackson v. Fletcher, 2011 WL 197954, at *9 (W.D. Va. Jan. 18, 2011) (unpublished); McKinney v. Johnson, 2010 WL 3463110, at *4 (D. S.C. Sept. 2, 2010) (unpublished). But see Pearson, 129 S. Ct. at 823 (law enforcement officers "are entitled to rely on existing lower court cases without facing personal liability for their actions."). But in any event, the court cannot conclude that, even under the Norman regime, the catalogue of injuries alleged by Williams were merely de minimis. Accord Bell v. Johnson, 2011 WL 1226003, at *8 n. 4 (W.D. Va. March 30, 2011) (unpublished); Owens v. Jefferson, 2010 WL 3170148, at *6 (D. S.C. May 4, 2010) (unpublished). Accordingly, Calton is not entitled to qualified immunity with respect to Williams' excessive force claim. His motion for summary judgment must therefore be denied.

### III. Conclusion

For these reasons, the motion for summary judgment filed by the defendant will be denied.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and to all counsel of record.

ENTER: This 27th day of April, 2011.

/s/ Glen Conrad

Chief United States District Judge