CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 13 2012

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:10-cv-00075 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| L. CALTON, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

This case involves a claim under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971),[1] by a <u>pro se</u> inmate who alleged that the defendant used excessive force against him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The case was tried before a jury and, after deliberating, the jury returned a verdict in favor of the plaintiff and awarded him $1,000 in compensatory damages. The case is now before the court on the defendant's renewed motion for judgment as a matter of law, the defendant's motion for a new trial, and the plaintiff's motion for an award of punitive damages or for an increased award of compensatory damages. (Docket Nos. 119, 121.) For the reasons set forth below, the court will deny all of the motions.

I.  **Factual and Procedural Background**

James Williams ("Williams" or "plaintiff"), a Virginia inmate proceeding <u>pro se</u>, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant, Lawrence Calton ("Calton" or "defendant"), a correctional officer at the United States Penitentiary in Lee County ("USP Lee"), employed excessive force against him in violation of his Eighth

---

[1] To state a cause of action under <u>Bivens</u>, an individual must prove that he suffered harm as a result of constitutional violations committed against him by federal officials. <u>Bivens</u>, 403 U.S. at 397. A <u>Bivens</u> claim is analogous to a claim under 42 U.S.C. § 1983, which authorizes civil actions against state officials in their personal capacities for violations of constitutional rights. Case law involving § 1983 claims is applicable to <u>Bivens</u> actions and vice versa. <u>Farmer v. Brennan</u>, 511 U.S. 825, 839 (1994); <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530 (1985).

Amendment rights. The case was tried before a jury on January 18–19, 2012. The plaintiff's case consisted of testimony from the plaintiff and from two other inmates who were eyewitnesses to the incident. In essence, the plaintiff and his two other witnesses testified that, on February 12, 2008, Williams was being moved between cells within USP Lee by Calton and another correctional officer named James Webb ("Webb"). According to the plaintiff, when he arrived at his new cell, he refused to enter it because it was unsanitary and requested to speak with the supervisory Lieutenant. However, according to the plaintiff's evidence, Calton then grabbed the defendant, slammed his head against the cell door, and then slammed him on the ground. Undisputed medical evidence demonstrated that, as a result of the incident, Williams suffered a one-and-a-half inch laceration to the back of his head, which required sutures, and an abrasion to his back. However, the plaintiff also asserted at trial that he suffered additional injuries, including impaired vision, a cracked tooth, and back pain.

Calton's case consisted of his own testimony and that of other USP Lee employees, including other correctional officers who witnessed the incident and various medical personnel who treated the plaintiff's injuries. The defendant's evidence essentially suggested that, upon arriving at his new cell, Williams became disruptive and attempted several times to pull away from Webb. At that point, according to the defendant's evidence, Webb, another correctional officer, and Calton brought Williams to the floor to maintain control of him and to apply leg restraints. Furthermore, the evidence at trial established the existence of an internal surveillance recording that captured the entire incident. According to the defendant's evidence, a prison official viewed the recording, but subsequently deleted it pursuant to prison policy, allegedly satisfied that the recording corroborated the defendant's account of the event. In any event, the video recording was not available for the jury's review.

At the conclusion of the plaintiff's case-in-chief and, again, at the close of all the evidence, the defendant moved the court under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law, arguing that Calton was entitled to qualified immunity, and that Williams had failed to establish that Calton had acted maliciously and sadistically for the very purpose of causing harm. The court denied both motions. The defendant now renews his Rule 50(b) motion for judgment as a matter of law, and further moves the court under Rules 50(b) and 59(a) for a new trial. Furthermore, the plaintiff moves the court for an increased damages award.

## II. Discussion

Because the standard governing a motion for a new trial is less stringent than the standard governing a motion for judgment as a matter of law, the court will first address the defendant's motion for a new trial pursuant to Rules 50(b) and 59(a).

### 1. Motion for new trial

"The decision to grant or deny a new trial is within the sound discretion of the district court . . . ." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). When considering a motion for new trial under Rule 59(a), the court is "permitted to weigh the evidence and consider the credibility of witnesses." Id. The court will grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice." Id.

The defendant advances two arguments in support of his motion for a new trial. First, Calton argues that he is entitled to qualified immunity. Second, Calton argues that the plaintiff failed to adduce evidence at trial sufficient to prove that Calton acted maliciously and sadistically for the very purpose of causing harm.

3

### a. Qualified immunity

The defense of qualified immunity shields government officials from liability for civil damages unless (1) the evidence establishes the violation of a constitutional right, and (2) the right at issue was clearly established at the time of the alleged misconduct. Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Calton argues that the plaintiff's injuries were de minimis. The defendant goes on to assert that he is entitled to qualified immunity in light of Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) ("[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis."). Calton argues that, because his use of force against Williams occurred while Norman, rather than Wilkins v. Gaddy, 130 S. Ct. 1175 (2010) (per curiam), was controlling precedent in the United States Court of Appeals for the Fourth Circuit, he was not on notice that his conduct was unconstitutional and, therefore, was entitled to qualified immunity. In Wilkins, the United States Supreme Court held that, when considering an Eighth Amendment claim, a court must consider "whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Id. at 1178.

This argument that the defendant presently raises has been raised before by the defendant in this case and, each time, the argument was rejected by this court. Williams v. Calton, No. 7:10-cv-75, 2011 WL 4737410, at *2–4 (W.D. Va. Oct. 6, 2011); Williams v. Calton, No. 7:10-cv-75, 2011 WL 1598775, at *3–6 (W.D. Va. Apr. 27, 2011). While the defendant is correct that the court's prior rulings on his qualified immunity defense are not necessarily dispositive, based on the fact that the record is now more fully developed, Ortiz v. Jordan, 131 S. Ct. 884, 889 (2011), the record developed at trial lends no added strength to the defendant's position.

4

Therefore, based on the trial record, the court will again reject the defendant's qualified immunity argument.

In its April 27, 2011 memorandum opinion, the court denied Calton's motion for summary judgment on qualified immunity grounds. In the opinion, the court stated as follows:

> Calton's claim boils down to an assertion that, prior to Wilkins, he could escape liability even where he acted maliciously and sadistically for the purpose of causing Williams harm, so long as Williams fortuitously avoided non-de minimis injury. This is a dubious conjecture, even at the time that the incidents in this case occurred, given that the Supreme Court had established prior to Norman that the "core judicial inquiry" with respect to Eighth Amendment excessive force claims centers upon the officers' subjective intent. Hudson v. McMillian, 503 U.S. 1, 7 (1992); Jackson v. Fletcher, Civil Action No. 7:09CV00408, 2011 WL 197954, at *9 (W.D. Va. Jan. 18, 2011); McKinney v. Johnson, C/A No. 2:09-1353, 2010 WL 3463110, at *4 (D.S.C. Sept. 2, 2010). But in any event, the court cannot conclude that, even under the Norman regime, the catalogue of injuries alleged by Williams were merely de minimis. Accord Bell v. Johnson, Civil Action No. 7:09-cv-214, 2011 WL 1226003, at *8 n.4 (W.D. Va. Mar. 30, 2011); Owens v. Jefferson, C/A No. 0:09-2888, 2010 WL 3170148, at *6 (D.S.C. May 4, 2010). Accordingly, Calton is not entitled to qualified immunity with respect to Williams' excessive force claim. His motion for summary judgment must therefore be denied.

Williams, 2011 WL 1598775, at *6 (internal citation omitted).

Thereafter, in an October 6, 2011 memorandum opinion, the court denied Calton's motion for judgment on the pleadings, again rejecting his qualified immunity argument. After reciting the language from the previous opinion quoted above, the court noted that Calton cited two recent decisions in which a prison official was granted qualified immunity based on Norman and its progeny as to conduct that occurred before the decision in Wilkins. See Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. 2011) (finding that, under the law at the time of the alleged excessive force, "a reasonable officer could have believed that as long as he did not cause more than de minimis injury to an arrestee, his actions would not run afoul of the Fourth Amendment"); Morva v. Johnson, No. 7:09-cv-00515, 2011 WL 3420650, at *7 (W.D. Va. Aug. 4, 2011) (Kiser, J.) ("Clearly established law in this circuit during December 2007 required a

plaintiff experiencing actionable cruel and unusual punishment to suffer more than a de minimis injury or receive force 'repugnant to the conscience of mankind.'" (quoting Norman, 25 F.3d at 1263)). In responding to the defendant's qualified immunity argument based on these two cases, the court stated: "The decisions in Chambers and Morva are not controlling law that this court is bound to apply here. Moreover, . . . neither case involved alleged injuries to the inmate that required stitches." Williams, 2011 WL 4737410, at *4.

The court remains convinced that, based on the evidence presented at trial, a reasonable juror could find that the plaintiff suffered more than a de minimis injury and that the defendant's actions were committed maliciously and sadistically. Hence, the evidence adduced at trial supports the conclusion reached by the court in its previous opinions—specifically, that the defendant is not entitled to qualified immunity under either Norman or Wilkins. Based on this legal conclusion, the court will deny the plaintiff's motion for a new trial on qualified immunity grounds.

### b.   Plaintiff failed to adduce evidence that Calton acted maliciously and sadistically for the very purpose of causing harm

To establish a claim under the Eighth Amendment, an inmate must show that the defendant inflicted upon him unnecessary and wanton pain and suffering. Whitley v. Albers, 475 U.S. 312, 319 (1986). "[An] Eighth Amendment analysis necessitates inquiry as to whether a prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

Calton's argument on the instant motions triggers the subjective component of this two-pronged inquiry. Specifically, the subjective component demands that the inmate demonstrate that the official applied force maliciously and sadistically for the very purpose of causing harm,

rather than as part of a good-faith effort to maintain or restore discipline. Hudson, 503 U.S. at 7. After weighing this standard against the evidence presented at trial, the court concludes that the defendant's argument must be rejected. After being presented with the evidence from both parties, the jury elected to credit the plaintiff's evidence over the defendant's evidence, finding that the defendant acted maliciously and sadistically for the very purpose of causing harm to the plaintiff.

In advancing this argument, the defendant points out that, during its deliberations, the jury posed a written question to the court. The question submitted to the court by the jury during deliberations does not belie the court's decision to reject the defendant's argument. The question submitted by the jury provided: "Can we find that plaintiff has established that the level of physical force applied by Lawrence Calton was more than trivial and caused the plaintiff harm on Feb. 12, 2008? (leaving out the part about maliciously & sadistically for the very purpose of causing plaintiff harm)[.]" The court treated this question as an inquiry as to whether the jury could find the defendant liable for some lesser nonconstitutional tort, such as assault and battery under state law. The court answered this question in the negative, and charged the jury to consider the instructions given by the court as to the standard that the plaintiff was required to meet in order to establish an Eighth Amendment violation. After resuming its deliberations and considering the court's instructions—specifically, that the jury could not disregard the requirement that the plaintiff prove that the defendant acted maliciously and sadistically—the jury still returned a verdict in the plaintiff's favor. Once again, considering the constitutional standard, the jury ultimately chose to believe the plaintiff's evidence over the defendant's evidence.[2] For this reason, the court will deny the defendant's motion for a new trial.

---

[2] Additionally, the fact that the jury elected not to award punitive damages, which would have also required the jury to find that Calton's actions were committed maliciously or wantonly, does not require a different conclusion either. Because the "question of whether to award punitive damages is discretionary[,]" Kelly v. Snider,

## 2. Motion for judgment as a matter of law

"A district court should grant a Rule 50(b) motion only if the court 'determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings.'" S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese, 284 F.3d 518, 532 (4th Cir. 2002) (quoting Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 279 (4th Cir. 1999)). "A court may grant [a Rule 50(b)] motion only "if, viewing the evidence in the light most favorable to the non-moving party and drawing every legitimate inference in that party's favor," it determines that "the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002) (quoting Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 87 F.3d 654, 656–57 (4th Cir. 1996)).

As stated above, the standard that governs a motion for judgment as a matter of law is much more stringent than the standard that governs a motion for a new trial. Accordingly,

---

963 F.2d 367, 1992 WL 112181, at *2 (4th Cir. 1992) (per curiam) (unpublished table decision) (citing Smith v. Wade, 461 U.S. 30, 52 (1983)), the jury's decision not to award punitive damages was not tantamount to a determination that the defendant did not act maliciously or wantonly.

The plaintiff attempts to employ a reversed chain of reasoning in a motion to award him punitive damages. (Docket No. 119.) The plaintiff contends that, because the jury returned a verdict against the defendant, the jury necessarily determined that Calton had acted maliciously or wantonly. Hence, the plaintiff argues, the jury should have awarded him punitive damages. However, as stated above, the "question of whether to award punitive damages is discretionary." Id. (citing Smith, 461 U.S. at 52). Therefore, even though the jury rendered a verdict in favor of the plaintiff and, in so doing, necessarily found that Calton had acted maliciously and sadistically, the jury was nonetheless free to exercise its discretion not to award punitive damages.

To the extent that the plaintiff's motion may be construed as one to increase the jury's award of compensatory damages, the court, after considering the arguments advanced by the plaintiff in his motion, will exercise its discretion not to disturb the jury's compensatory damage award. The plaintiff argues that the compensatory damages award does not account for all of the injures that he allegedly sustained as a result of the force employed against him. However, it is within the jury's discretion to determine, based on the evidence presented at trial, the extent of the plaintiff's alleged injuries and to fashion a damages award in accordance with that determination—this court is not convinced that the jury's compensatory damages award is incommensurate with the extent of the plaintiff's injuries, as they could have been reasonably quantified by the jury. After all, the plaintiff suffered no out of pocket medical expenses. The court finds meritless the plaintiff's remaining contentions concerning the alleged denial of access to his legal materials, denial of access to a writing instrument, and inability to shave his head in order to show the jury the extent of his scar. Furthermore, to the extent that the plaintiff requests that the court grant him relief related to his 2001 state court trial, this court lacks jurisdiction to grant any relief related to that proceeding.

because the court rejected the defendant's contentions while applying the more elastic standard associated with a motion for a new trial, the court concludes that it must likewise reject the defendant's contentions when applying the more rigorous standard governing a motion for judgment as a matter of law. Hence, for the same reasons articulated by the court in relation to its analysis of the defendant's motion for a new trial, the court will deny the defendant's motion for judgment as a matter of law.

### III.  Conclusion

At trial, the plaintiff adduced evidence that the defendant slammed him against the cell door and then slammed him on the ground. Succinctly stated, the jury chose to credit the plaintiff's account of the events over that of the defendant. The court concludes that this verdict is one that a reasonable jury could have reached after considering the evidence adduced at trial. More specifically, the court concludes that a reasonable jury could have found that Williams suffered more than a de minimis injury, that Calton acted maliciously and sadistically for the very purpose of causing harm, and that Calton committed a constitutional tort under the rubric of either Norman or Wilkins. Thus, the court again concludes that the defendant is not entitled to qualified immunity.

For the reasons detailed above, the court will deny the defendant's motions for a new trial and for judgment as a matter of law.[3] (Docket No. 121.) Furthermore, as explained above, supra note 2, the court will deny the plaintiff's motion for an award of punitive damages or for an

---

[3] Calton also argues that the court must set aside the jury's award of $1,000 in compensatory damages on the ground that he did not sustain a compensable harm proximately caused by the defendant. For the same reasons described above, the court will not set aside the jury's compensatory damages award. See Hetzel v. Cnty. of Prince William, 89 F.3d 169, 171 (4th Cir. 1996) ("A jury's award of compensatory damages will be set aside on the grounds of excessiveness only if 'the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, or no substantial evidence is presented to support it.'" (internal quotation marks and citations omitted)).

increased award of compensatory damages. (Docket No. 119.)

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 12th day of March, 2012.

/s/ Glen Conrad
Chief United States District Judge